UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| DANTE EVANS, on behalf of himself and all others similarly situated, | Case No. |
| **v.** | |
| Plaintiff, | CLASS ACTION COMPLAINT <u>& DEMAND FOR JURY TRIAL</u> |
| ELI LILLY AND COMPANY, | |
| Defendant. | |

-----------------------------------------------------------------

Plaintiff, **DANTE EVANS** ("Plaintiff" or "Mr. Evans"), on behalf of himself and all others

similarly situated (collectively, "Plaintiffs"),  by and through their undersigned counsel, JOSEPH

& NORINSBERG, LLC, as and for their class action complaint upon Defendant, ELI LILLY AND

COMPANY, ("Eli Lilly" or "Defendant"), hereby alleges as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff is a visually-impaired and legally blind person who requires screen-reading

software to read website content while using his computer. **Ex. A** – DANTE EVANS, Legally

Blind Diagnosis, dated 7/12/2024. Plaintiff uses the terms "blind" or "visually-impaired," as

Plaintiff's central visual acuity with correction is less than or equal to 20/200. Some sight-impaired

individuals who meet this definition have limited vision, while others have zero vision.

2.      Plaintiff, Dante Evans is legally blind and relies on screen-reading software

specifically NVDA (Nonvisual Desktop Access)—to navigate digital interfaces. On multiple

occasions in July and August 2025, Evans attempted to access Defendant's public-facing websites,

www.lilly.com and LillyDirect®, to research medications, affordability programs, and condition-

specific resources for diabetes and sleep apnea. Despite Lilly's public commitment to "making

1

medicine accessible for all," Evans was repeatedly denied meaningful access due to widespread accessibility barriers.

3.    Defendant ELI LILLY AND COMPANY is a multinational pharmaceutical corporation headquartered in Indianapolis, Indiana. It operates www.lilly.com and LillyDirect®, which serve as centralized platforms for medication access, affordability programs, condition-specific education, and safety alerts. Lilly does not operate physical retail stores and relies on its digital infrastructure to distribute proprietary medications and coordinate care, through their digital interface.

4.    Plaintiff seeks injunctive and declaratory relief to compel Defendant to remediate its websites, implement accessibility monitoring, and adopt policies that ensure blind and visually impaired users can access its services with independence, dignity, and equity.

5.    Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

6.    Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.  The claims also arise under the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

9.      Venue is proper in this District under 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website, www..lilly.com, within his home in Bronx County, New York, located within this Judicial District.

10.     Eli Lilly and Company is a global pharmaceutical leader headquartered in Indianapolis, Indiana, with over 145 years of experience developing life-changing medicines. Known for its pioneering work in diabetes, oncology, neuroscience, and immunology, Lilly operates through a robust digital infrastructure that includes its consumer-facing platform, LillyDirect®. This online pharmacy service offers direct access to authentic Lilly medications, free home delivery, and integrated support for affordability, prior authorizations, and condition-specific education. Lilly's mission to "put health above all" is reflected in its expansive well-being library, telehealth partnerships, and commitment to removing barriers to care. Despite its public

3

messaging around accessibility and inclusion, Lilly's websites remain inaccessible to blind users, undermining its stated values and violating federal accessibility standards

11.     Because Defendant's website is directly tied to the full use and enjoyment of its digital services, and because Plaintiff resides in Bronx County and attempted to transact with Defendant's services from within the Southern District of New York, venue is proper, and jurisdiction is established.

12.     Plaintiff seeks declaratory and injunctive relief to compel Defendant to remediate its website, implement ongoing accessibility monitoring, and ensure compliance with Federal, State and City Laws, Statutes and Regulations. It must be borne in mind that this action is not merely seeking technical compliance—it is a demand for dignity, equity, and lawful access to essential services.

13.     Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff regularly from accessing the Defendant's Website www..lilly.com in the future.

14.     The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." (See Guidance on Web Accessibility and the ADA).  Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

15.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## **NATURE OF ACTION**

16.    The Internet is a vital tool for accessing healthcare, especially for blind and visually impaired individuals. Screen-reading software allows users to navigate websites using auditory cues and keyboard commands. For this technology to function, websites must be coded with semantic structure, ARIA roles, and accessible markup. Defendant's websites fail to meet these standards. Common barriers include:

- Broken links to affordability programs and medication resources
- Unlabeled form fields and buttons
- Non-descriptive link text
- Keyboard traps and inaccessible modal dialogs
- Improper heading structure
- Dynamic content not announced to screen readers

These barriers exclude blind users from accessing essential pharmaceutical services and violate the ADA's mandate for equal access.

17.    In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

5

18.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase, and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access  or "NVDA," which is the screen-reader Plaintiff utilizes on a daily basis when accessing the internet.

19.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

20.     Screen readers have rules and expectations about what the gathered information is and should be, and uses sophisticated rules to interpret what it has "seen," i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content.

21.     The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These  guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

22.     Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.     A text equivalent for every non-text element is not provided;

b.     Title frames with text are not provided for identification and navigation;

c.     Equivalent text is not provided when using scripts;

d.     Forms with the same information and functionality as for sighted persons are not provided;

e.     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.     Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.     Web pages do not have titles that describe the topic or purpose;

i.     The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.     One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.     The default human language of each web page cannot be programmatically determined;

l.     When a component receives focus, it may initiate a change in context;

m.     Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.     Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she

is not a robot;

o.     In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.     Inaccessible Portable Document Format (PDF); and

q.     The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

23.     Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**STANDING**

24.     Plaintiff, Dante Evans is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as "NVDA for Windows."

25.     Screen reader "software translates the visual Internet into an auditory equivalent.

At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art*

*Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user
> to effectively use websites. For example, when using the visual internet, a seeing
> user learns that a link may be "clicked," which will bring her to another webpage,
> through visual cues, such as a change in the color of the text (often text is turned
> from black to blue). When the sighted user's cursor hovers over the link, it changes
> from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this
> same information. When a sight-impaired individual reaches a link that may be
> "clicked on," the software reads the link to the user, and after reading the text of the
> link, says the word "clickable."…Through a series of auditory cues read aloud by
> the screen reader, the visually impaired user can navigate a website by listening and
> responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers,
https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People

Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on July 25, 2025;

estimating 26.0 million adult Americans reported sight deficiency).

26.    Eli Lilly and Company positions itself as a patient-first pharmaceutical leader, touting over

145 years of innovation and a mission to "put health above all." Through its digital platform LillyDirect®,

the company offers direct-to-consumer access to authentic Lilly medications, free home delivery,

affordability support, and condition-specific education. LillyDirect is marketed as a seamless,

compassionate solution for patients managing chronic conditions—especially those requiring discreet,

ongoing care. The platform integrates telehealth options, savings programs, and pharmacy coordination,

reinforcing Lilly's public commitment to transparency, inclusion, and equitable access.

27.    However, these promises ring hollow for blind and visually impaired users. Despite its

emphasis on removing barriers to care, LillyDirect's websites contain persistent accessibility failures that

exclude blind individuals from independently navigating the platform. Common violations include unlabeled form fields, broken links to affordability resources, non-descriptive buttons, and dynamic content that is not announced to screen readers. These barriers prevent blind users from accessing essential pharmaceutical services, including medication ordering, savings enrollment, and condition education—services that sighted users can access with ease.

28.    As a result, Lilly's digital infrastructure not only contradicts its stated values but also violates the Americans with Disabilities Act (ADA), which mandates equal access to public accommodations, including online services. The exclusion of blind users from LillyDirect's core offerings creates concrete harm: denial of timely medication, loss of autonomy, and emotional distress stemming from systemic neglect. Lilly's failure to remediate these issues—despite its vast resources and public health mission—demonstrates a pattern of digital discrimination that directly impacts the standing of plaintiffs seeking equitable access under federal law.

**<u>Barriers Encountered While Shopping on Lilly's Website</u>**

29.    On July 18 and 19, 2025, Plaintiff Evans attempted to access www.lilly.com and LillyDirect® to research insulin affordability programs for himself and sleep apnea treatment for a family member managing multiple chronic conditions. Despite Lilly's public messaging around inclusion and accessibility, Evans encountered a series of digital barriers that rendered the site unusable with his screen reader.

30.    The link to Lilly's insulin affordability portal—insulinaffordability.lilly.com- was broken, leading to a blank page or error message. Evans attempted to navigate to condition-specific pages for diabetes, obesity, and sleep apnea, but these sections lacked proper semantic structure and ARIA roles, causing his screen reader to skip over critical content or announce it out of order. Intake workflows within LillyDirect® included unlabeled form fields, making it impossible to

enter information without guessing the purpose of each input. Buttons throughout the site were labeled only as "button," offering no context or function, and auto-rotating carousels moved without pause controls, preventing Evans from reading or interacting with featured content.

31.    Dynamic price updates and medication availability changes occurred without any announcement to assistive technology, leaving Evans unaware of key information that sighted users could easily perceive. These failures obstructed his ability to explore Lilly's affordability programs, understand treatment options, and initiate the intake process for LillyDirect® services.

32.    Evans returned to the site on August 5, 2025, hoping the issues had been resolved. Instead, he encountered the same barriers, reinforcing the exclusion he experienced weeks earlier. He remains interested in using LillyDirect® to support his own and family member's health journey but is currently unable to do so independently due to the site's persistent inaccessibility. These repeated encounters have caused frustration, emotional harm, and a loss of autonomy— concrete injuries that establish standing under the ADA and related civil rights statutes.

### Intent to Return

33.    Evans remains actively interested in returning to www.lilly.com and LillyDirect® to access the very services that Lilly promotes as essential for patients managing chronic conditions. His motivation is deeply personal: he is blind due to diabetes, and he continues to support a family member navigating both diabetes and sleep apnea. LillyDirect® offers exclusive access to insulin affordability programs, discreet home delivery of medications, and condition-specific education—resources that Evans cannot obtain elsewhere with the same promise of integration and support. ***(See Ex. B – Comparison Chart)***

34.     Despite encountering significant accessibility barriers on July 18, 19, and again on August 5, 2025, Evans has not abandoned his efforts. His intent to return is driven by necessity, not convenience. He seeks to use Lilly's platform to research treatment options, initiate intake workflows, and secure affordable medication for his loved one. These are not speculative interests—they are ongoing, time-sensitive needs that Lilly's platform is uniquely positioned to address.

35.     Evans's repeated attempts and continued desire to access LillyDirect® establish a clear and credible intent to return. His experience reflects not only frustration and exclusion, but also a persistent effort to engage with a public accommodation that claims to serve patients like him. The barriers he encountered are not theoretical; they are repeatable, documented, and unresolved. As such, Evans's standing under the ADA is reinforced by both his concrete injuries and his ongoing intent to access the site for critical health-related services.

36.     A technical audit of www.lilly.com was conducted on August 18, 2025, using PowerMapper's SortSite Accessibility Checker. The final audits corroborated Plaintiff's firsthand experience and confirmed the presence of multiple accessibility violations. The audit reports, attached hereto, identified the following issues:

- Missing alternative text on numerous product images, rendering them invisible to screen reader users;

- Non-descriptive link text (e.g., "click here"), which failed to convey purpose or destination;

- Unlabeled form fields in both the checkout and login processes, obstructing independent completion of transactions;

- Keyboard traps and inaccessible modal dialogs that prevent navigation without a mouse;

12

- Improper heading structure, impeding logical navigation and orientation for assistive technology users.

37.    These barriers were not isolated glitches or temporary oversights. They reflect systemic design failures that denied Plaintiff the ability to shop for basic consumer goods with independence, autonomy, and dignity. The absence of semantic structure, ARIA roles, and keyboard operability violates the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA and constitutes unlawful discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182. *(See Ex. C – Audit Reports)*

38.    Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.    Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failing to construct and maintain a Website that is sufficiently intuitive to be equally accessible to visually impaired individuals, including Plaintiff; and

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

39.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

40.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include

13

requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

41.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Websites. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

      a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

      b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

      c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies with the WCAG 2.1 guidelines; and;

      d.    Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

42.    Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

43.    Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online

platforms. These amounts are far greater than the associated cost of making Defendant's Websites equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Websites.

44.    Although Title III of the Americans with Disabilities Act does not require exhaustion of administrative remedies prior to filing suit, see *42 U.S.C. § 12188(a)(1)*, Plaintiff nonetheless reviewed Defendant's website for any accessible means of contact to report the barriers encountered. The absence of a screen-reader-compatible support form or alternative outreach mechanism constitutes a failure to provide auxiliary aids and services necessary for effective communication, in violation of *28 C.F.R. § 36.303(c)(1)*. This omission denied Plaintiff the opportunity to engage with Defendant's services on equal terms and further violated the ADA's mandate for "full and equal enjoyment" of public accommodations, *42 U.S.C. § 12182(a)*. Defendant's failure to offer even a basic accessible feedback channel reflects not just technical oversight, but a systemic exclusion of blind users from its digital infrastructure. [1]

## CLASS ACTION ALLEGATIONS

45.    Plaintiff, DANTE EVANS, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

---

[1] See U.S. Department of Justice, *Guidance on Web Accessibility and the ADA* (2022), stating: "The Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

46.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

47.     Common questions of law and fact exist amongst the Class, including:

a.     Whether Defendant's Website is a "public accommodation" under the ADA;

b.     Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

48.     Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

49.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2)

because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

50.     Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

52.     Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

### FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

53.     Plaintiff, DANTE EVANS, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

55.    Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

56.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

58.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to

non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the

discriminatory conduct as the violations are ongoing.

59.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief**

below.

## SECOND CAUSE OF ACTION

### (Violation of Section 504 of the Rehabilitation Act of 1973)

60.    Plaintiff DANTE EVANS, on behalf of himself and the other Class Members,

Repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61.    Plaintiff is a qualified individual as that term is defined in Section 504 of the Rehabilitation Act of

1973, 29 USC 794.

62.    As Defendant receives Federal funds under the Medicare, Medicaid, and other programs,

Section 504 of the Rehabilitation Act applies to Defendant.

63.    For the same reasons as Defendant has violated Title III of the ADA, Defendant has also

violated Section 504 of the Rehabilitation Act of 1973.

64.    As Defendant is a healthcare provider, it should be more aware of the damage its website

incurs to people with disabilities like Plaintiff.

65.    Consequently, in failing to provide an accessible website, Defendant has engaged in

deliberate indifference to Plaintiff and is liable for compensatory damages as well as injunctive relief.

## THIRD CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

66.    Plaintiff, DANTE EVANS, on behalf of himself and the New York City Sub

19

Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

68.    Defendant is subject to NYCHRL because it owns and operates the Website www..lilly.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

69.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

70.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide  a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

20

71.  Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

72. Defendant has failed to take any prompt and equitable steps to address the discriminatory conduct as these violations are ongoing.

73. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

74.  Defendant's actions violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

75.  Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

76.  Plaintiff is also entitled to reasonable attorneys' fees and costs.

21

77.  Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

78.  Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79.  At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

80.  Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

81.  Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

82.  Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

83. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful

22

discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

84.  Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

85.  Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

86.  The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can

demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

87.  Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

88.  Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.  Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

89.   Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

<u>**FIFTH CAUSE OF ACTION**</u>
**(Violation of New York State Civil Rights)**
**("NYCRL")**

90.  Plaintiff, DANTE EVANS, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth

herein.

91.  Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

92.  Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

93.  No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

94.  § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

95.  Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

96.  Defendant intentionally and willfully failed to remove the barriers on their Website,

25

discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

97.  Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

98. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

99.  Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## SIXTH CAUSE OF ACTION
### (Declaratory Relief)

100.  Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable

laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

102.  A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.    Pre-judgment and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       September 16, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*Robert L. Schonfeld*

_____
Robert L. Schonfeld
*Attorneys for Plaintiff*
825 Third Avenue
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
Rschonfeld@employeejustice.com

28